**Phillips & Paolicelli, LLP**
747 3rd Avenue, 6th Floor
New York, New York, 10017
Phone: 212-388-5100; Fax 212-388-5200
Attorneys for Plaintiffs
By:  Steven Phillips, Esq.
  Victoria Phillips, Esq.
  Melissa Stewart, Esq.
  (*Pro Hac Vice Motion*
  *to be Submitted*)

**Szaferman Lakind Blumstein & Blader, P.C.**
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08534
Phone: 609-275-0400; Fax: 609-275-4511
Attorneys for Plaintiffs
By:  Arnold Lakind, Esq.
  Robert Lytle, Esq.

**Cooney & Conway**
120 N. Lasalle Street, Suite 3000
Chicago, Illinois 60602
Phone:  312-236-6166; Fax 312-236-3029
Attorneys for Plaintiffs
By:  Kevin Cooney, Esq. (*Pro Hac Vice*
  *Motion to be Submitted*)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERESA SLUSSER AND WILLIAM SLUSSER AS PARENTS AND NATURAL GUARDIAN OF ALEXANDER SLUSSER, <br><br>   Plaintiffs, <br><br> vs. <br><br> SOLVAY SPECIALTY POLYMERS, USA, LLC; SOLVAY SOLEXIS, INC.; ARKEMA, INC.; E.I. DU PONT DE NEMOURS & COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; THE 3M COMPANY; AND JOHN DOE ENTITIES #1-10, <br><br>   Defendants. | CIVIL ACTION NO. <br><br><br><br> **COMPLAINT AND JURY DEMAND** |

5027241.1

Now comes Plaintiffs, THERESA SLUSSER AND WILLIAM SLUSSER, individually, and as Parents and Natural Guardians of ALEXANDER SLUSSER (collectively "Plaintiffs"), by and through their undersigned counsel, and for their Complaint against Defendants, SOLVAY SPECIALITY POLYMERS, USA, LLC, SOLVAY SOLEXIS, INC., ARKEMA, INC., E.I.DU PONT DE NEMOURS & COMPANY, THE CHEMORS COMPANY, THE CHEMORS COMPANY FC, LLC, THE 3M COMPANY, and JOHN DOE ENTITIES #1-10 (collectively "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.     This is a civil action brought by Theresa Slusser and William Slusser on behalf of Alexander Slusser, as the Parents and Natural Guardians of Plaintiff Alexander Slusser, and for damages sustained and that will be sustained by Theresa and William Slusser as a consequence of injuries to Alexander Slusser.

2.     Plaintiff Alexander Slusser suffers from profound and permanent personal injuries including:

    a.     Brain damage;

    b.     Attention-Deficit/Hyperactivity Disorder;

    c.     Cognitive Impairment;

    d.     Motor Deficits;

    e.     Inability to Live Unassisted;

    f.     Profound Mental Anguish; and

    g.     Loss of the ability to enjoy life's pleasures.

3.      Those injuries were foreseeably caused by Defendants' misconduct, including their intentional manufacturing, use, discharge, and/or disposal of toxic and dangerous chemicals including but not limited to poly- and perfluoroalkyl substances ("PFAS"), [for instance perfluorononanoic acid ("PFNA"), perfluorooctanoic acid ("PFOA"), and perfluorooctanesulfonic acid ("PFOS"), as well as their replacement compounds, including but not limited to "GenX"].

4.      As a consequence of Defendants' intentional, knowing, reckless, grossly negligent, and negligent acts and omissions described herein, resulting in the contamination of the water, air, and soil, including but not limited to Plaintiffs' water supply, Plaintiffs Theresa Slusser and William Slusser, as the Parents and Natural Guardian of Plaintiff Alexander Slusser, seek to recover compensatory and punitive damages as a consequence of the personal injuries suffered by Alexander Slusser as well as for damages sustained and that will be sustained by Theresa and William Slusser as a consequence of injuries to Alexander Slusser.

## PARTIES

5.      Plaintiff Alexander Slusser is an adult citizen of the State of New Jersey, born on March 27, 1995, domiciled at 266 Pennsville-Pedricktown Road, Pedricktown, NJ 08067, where he has lived for the past 18 years with his Parents and Natural Guardians Theresa and William Slusser, who are domiciled at the same address and are also citizens of the State of New Jersey. Plaintiffs believe that Alexander Slusser is a person in need of a *Guardian ad Litem*, and intend to apply for such an appointment. The parental Plaintiffs' individual claims relate to their entitlement to recover damages by virtue of derivative claims stemming from their son's injuries.

6.      Plaintiffs Theresa and William Slusser lived at 258 G Street, Carneys Point, NJ from 1993 until 1996.  Plaintiff Alexander Slusser lived at 258 G Carneys Point, NJ from his birth until 1996.

7.      Defendant Solvay Specialty Polymers, USA, LLC ("Solvay USA") is a corporation duly organized under the laws of the State of Delaware with its principal place of business located in Houston, Texas.  As a limited liability company Solvay USA's citizenship is determined by the citizenship of each of its members. See, e.g., *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010).  Upon information and belief based upon a search of publicly available sources, Solvay USA's sole member is Ausimont Industries Inc. ("Ausimont"), a Delaware corporation. Ausimont is a holding company with no operations. Its headquarters, president and one of its board members are based in Houston, Texas. Accordingly, Ausimont's principal place of business is Houston, Texas. See, e.g., Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010); Johnson v. Smithkline Beecham Corp., 724 F.3d 337, 347 (3d Cir. 2013). Thus, Ausimont is a citizen of Delaware and Texas. Solvay USA, in turn, is also a citizen of Delaware and Texas. Neither Solvay USA nor Ausimont are citizens of the same state as the Plaintiffs.

8.      Defendant Solvay Solexis, Inc. ("Solvay Solexis") is the predecessor of Solvay USA and was a corporation duly organized under the laws of the State of Delaware with its principal place of business located in Houston, Texas.

9.      Defendants Solvay USA and Solvay Solexis will collectively be referred hereinafter as "Solvay".

10.     Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation with its principal place of business at 2000 Market Street, Philadelphia, PA 19103.

11.     Defendant E.I. du Pont de Nemours & Company ("DuPont") is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, DE 19805.

12.     Defendant The Chemours Company ("Chemours Co.") is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 1007 Market Street, Wilmington, DE 19899.

13.     Defendant The Chemours Company FC, LLC ("Chemours FC") is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 1007 Market Street, Wilmington, DE 19899.  As a limited liability company, Chemors FC's citizenship is determined by the citizenship of each of its members. See, e.g., *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010).  Upon information and belief based upon a search of publicly available sources, none of Chemors FC's members are citizens of the same state as the Plaintiffs.

14.     Defendants Chemours Co. and Chemours FC will collectively be referred hereinafter as "Chemours".

15.     Defendant The 3M Company ("3M") is a corporation duly organized under the laws of the State of Minnesota with its principal place of business at 2501 Hudson Road, Maplewood, MN 55144.

16.     Defendants John Doe Entities  #1-10 are fictitious names of corporations, companies, partnerships, or other business entities or organizations whose identities  cannot be ascertained as of the filing of this Complaint, certain of which are successors to, predecessors or alter egos of, or are otherwise related to, the identified defendants in this matter or which are otherwise liable pursuant to the causes of action set forth herein.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 since none of the Plaintiffs are domiciled in the same state as any Defendant and the amount in controversy exceeds $75,000.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the claim occurred in this district.

## STATEMENT OF FACTS

### I.     Poly- and perfluoroalkyl Substances ("PFAS")

19.      Plaintiff Alexander Slusser suffers from profound personal injuries described above, all proximately caused by the Defendants' misconduct, including their intentional manufacturing, use, discharge, and/or disposal of toxic and hazardous chemicals including, but not limited to, poly- and perfluoroalkyl substances ("PFAS"), whose compounds include perfluorononanoic acid ("PFNA"), perfluorooctanoic acid ("PFOA"), and perfluorooctanesulfonic acid ("PFOS"), and their replacement compounds, including but not limited to "GenX".

20.     The United States Environmental Protection Agency ("EPA") has identified 3M as the dominant global producer of PFOA and related chemicals.

21.     3M manufactures at least eighty-five (85%) percent of total worldwide volumes of PFOA and related chemicals.

22.     Poly- and perfluoroalkyl substances ("PFAS") are man-made chemicals.

23.     PFAS have been manufactured and used in the United States since the 1940s.

24.     PFAS have fire-resistant properties.

25.     PFAS act as oil, grease, and water repellants.

26.     PFAS have been used to make many household products such as Teflon®, Gore-Tex® Stainmaster®, Scotchgard®, and Tyvek®.

27.     PFAS compounds are a substantial threat to the environment and human health.

28.     Some PFAS have been classified as carcinogenic.

29.     Studies report that PFAS exposure have the capacity to cause testicular cancer, kidney cancer, liver cancer, autoimmune disorders, endocrine disorders, developmental and genetic defects to fetuses, developmental defects to breastfed babies, reduced vaccine response, increased cholesterol, and increased liver enzymes.

30.     PFAS compounds are resistant to degradation.

31.     PFAS compounds persist indefinitely in the environment.

32.     PFAS compounds bioaccumulate in living tissue.

33.     People who consume PFAS via drinking water and are otherwise exposed accumulate increasing concentrations of PFAS in their blood.

34.     For decades, Defendants and their predecessors in interest have known (or should have known) of the highly toxic characteristics of PFAS and other chemicals.

35.     The New Jersey Department of Environmental Protection ("NJDEP") has devoted and is continuing to expend substantial resources to identify and investigate the presence of PFAS in New Jersey's environment, as well as monitor, treat, clean up, and/or remove PFAS in impacted areas.

36.     Chemicals including but not limited to "GenX" have been substituted by Defendants in lieu of their PFAS chemicals.

37.     These replacement chemicals are being inaccurately touted as short-chain and having shorter half- lives.

38.     However, these replacement chemicals do not break down in the environment.

39.     They have also been detected in drinking water, groundwater, and surface waters.

40.     In 2009, EPA issued preliminary health advisory values for PFOA and PFOS in drinking water of 400 parts per trillion ("ppt") and 200 ppt, respectively.

41.     In 2016, EPA lowered its advisories for PFOA and PFOS to 70 ppt collectively total in further recognition of their extreme danger at even the most miniscule doses.

42.     In 2018 the United States Department of Health and Human Services, Agency for Toxic Substances and Disease Registry ("ATSDR") released draft minimum risk levels (the amount of a chemical a person can eat, drink, and breath each day without a detectable health risk) of 21 ppt for PFOA and PFNA, and 14 ppt for PFOS.

43.     NJDEP has adopted a specific groundwater Quality Standard ("GWQS") of 10 ppt for PFNA and a Maximum Contaminant Level ("MCL") of 13 ppt.

44.     NJDEP added PFNA to its List of Hazardous Substances on January 16, 2018.

45.     On March 13, 2019, the NJDEP established interim specific groundwater quality criteria for PFOA and PFOS of 10 ppt.

46.     NJDEP has proposed adding PFOA and PFOS to the List of Hazardous Substances.

47.     NJDEP also issued a Statewide PFAS Directive, Information Request and Notice to Insurers against Defendant Solvay Specialty Polymers USA, LCC, Defendant Solvay Solexis, Inc., Defendant E.I. du Pont de Nemours & Company, Dowdupont, Inc ., DuPont Specialty Products USA, LLC, Defendant The Chemours Company FC, LLC, Defendant The Chemours Company, and Defendant The 3M Company "to notify them that the Department believes them to be responsible for the significant contamination of New Jersey's natural resources, including

the air and waters of the State, with poly- and perfluoroalkyl substances ("PFAS")…" which encompass the air and water utilized by plaintiffs. Attached hereto as Exhibit A is a true and correct copy of the NJDEP Directive.

## II.   Solvay and Arkema's West Deptford Facility

48.    Solvay has been the owner and operator of a manufacturing facility located at 10 Leonard Lane, West Deptford, NJ 08085 ("the West Deptford facility") from 1990 to present.

49.    Before 1990, Arkema owned and operated the West Deptford facility.

50.    Solvay manufactured polyvinylidene fluoride ("PVDF"), which is another PFAS compound, at the West Deptford facility.

51.    PVDF is a specialty plastic used in conjunction with lithium batteries, medical and defense uses, semi-conductors, or other instances when a higher level of purity is required.

52.    On information and belief, Arkema manufactured PVDF and other high-performance materials at the West Deptford facility prior to 1990.

53.    Solvay's West Deptford facility was considered to have the second highest capacity in the world for purposes of using Surflon S-11 to make PVDF, which is composed of approximately 74% PFNA.

54.    In connection with its operations, Solvay released vast amounts of PFNA and other toxins into the surrounding air, soil and water contaminating the site, off-site properties including Plaintiffs', and New Jersey's natural resources with the PFNA chemical.

55.    At relevant times, Solvay also used sodium perfluorooctanoate (NaPFO) as a surfactant at the West Deptford Facility, which was supplied to it by 3M.

56.    NaPFO degrades into PFOA.

57.     As a result of its operations, Solvay released vast amounts of PFOA into the surrounding air, water and soil contaminating the site, off-site properties including Plaintiffs', and New Jersey's natural resources with the PFOA chemical.

58.     Prior to 1990, and at relevant times, as a result of their operations, Arkema released massive amounts of PFOA into the surrounding air, soil and water contaminating the site, off-site properties including Plaintiffs', and New Jersey's natural resources with the PFOA and other toxic chemicals.

## III.     DuPont and Chemours' Chamber's Works Facility

59.     For over a century, from 1891 to 2015, DuPont owned and operated Chambers Works, 67 Canal Road and Route 130, located in Pennsville and Carneys Point Townships, New Jersey.

60.     DuPont produced, used, and discharged into the environment approximately 1,200 separate chemicals, pollutants, and other hazardous substances from the Chambers Works facility.

61.     PFOA was used at Chambers Works beginning in the late 1950s to, among other things, manufacture fluoroelastomers, perfluoroelastomers and specialty fluoroelastomers used in a variety of consumer and other products for their chemical non-stick and heat-resistant properties.

62.     Telomers were used and manufactured at Chambers Works.

63.     PFOA is a by-product of the telomer manufacturing process.

64.     At relevant times 3M supplied DuPont with PFOA.

65.     DuPont also accepted large quantities of PFOA-containing waste from off-site facilities and discharged this and other toxic waste along with wastewater from its on-site PFOA-related processes through its wastewater treatment plant.

66.     As a result of its operations, for decades, DuPont released massive amounts of PFOA as well as other PFAS, including PFNA, and other toxins from Chambers Works into the surrounding air, water and soil, contaminating the site, off-site properties including Plaintiffs', and New Jersey's natural resources.

67.     In 2015, DuPont transferred its Chambers Works facility to Chemours.

68.     However, DuPont continued to operate at the location pursuant to an industrial lease through which DuPont was the tenant and Chemours FC was the landlord.

69.     Chemours accepted the transfer of DuPont's Chambers Works facility with the knowledge that the site had been wrongfully contaminated with PFAS and other toxic substances.

70.     Chemours accepted the transfer of DuPont's Chambers Works facility with the knowledge that it was discharging PFAS and other toxins into the surrounding air and water contaminating off-site properties including Plaintiffs', and New Jersey's natural resources.

71.     Sampling of residential drinking water wells in the surrounding area revealed contamination at least five miles away from the Chambers Works facility with a substantial number of wells exceeding applicable screening criteria for concentrations of PFOA, PFNA, or PFOA and PFOS combined.

72.     NJDEP has declared that: "DuPont has not been working in good faith to address the contamination it released into New Jersey's environment. Instead, DuPont knowingly concealed the true nature of the chemicals it discharged, while simultaneously moving forward

with a corporate reorganization that moved its 'performance chemicals' business (including its

PFAS-related product lines), the [Chambers Works facility] itself, and the associated liabilities to

Chemours [Co.] and Chemours FC and away from DuPont (and tens of billions of dollars of its

assets). DuPont has concealed from the Department and the community the extent and nature of

the environmental injuries its contaminants caused."

73.     NJDEP also declared that "[b]oth DuPont and The 3M Company ("3M") put their

profits above the public health, safety, and the environment of New Jersey."

74.     DuPont and 3M committed acts and omissions with respect to PFAS and other

toxins with actual malice and/or with a wanton and willful disregard of people who foreseeably

might be harmed by those acts or omissions.

75.     This conduct was performed with greed and in callous disregard of the public

health as well as Plaintiffs' health and well-being, in order to maximize profit, avoid necessary

expense, to promote sales of their products and to reduce or eliminate their obligations to

otherwise remediate or prevent the discharge of PFAS into the environment and Plaintiffs'

private wells.

**IV.     Defendants' Contamination of Groundwater and Drinking Water**

76.     For decades, Defendants knew or should have known of the severe and adverse

health and environmental effects and impacts of PFAS and other toxins.

77.     Despite that knowledge, Defendants continued to use PFAS and other toxins in

products and release them into the environment.

78.     From as early as the 1970s, Defendant 3M knew that PFOA and PFOS and other

toxins were harmful to people and the environment based on its own studies.

79.     Defendant 3M knew that PFAS and other toxins had the capacity to and

foreseeably would leach into groundwater and contaminate the environment.

80.   As early as 1960, an internal 3M memo admitted that its chemicals "[would] eventually reach the water table and pollute domestic wells."

81.   3M actively sought to suppress scientific research on the hazards associated with PFAS products and other toxins.

82.   3M intentionally mounted a campaign to control the scientific dialogue on the exposure, analytical, fate, effects, human health, and environmental risks of its PFAS products and other toxins.

83.   At least one scientist funded by 3M reported his goal as "keep[ing] 'bad' papers [regarding PFAS] out of the literature" because "in litigation situations" those articles "can be a large obstacle to refute."

84.   From studies of its own workers, Defendants DuPont knew that PFOA and other chemicals were toxic to people.

85.   Defendants DuPont knew that PFOA and other toxins were being discharged into the environment.

86.   Defendants DuPont failed to disclose the risks to regulators, the public or the Plaintiffs.

87.   In a 2003 report on Chambers Works, DuPont disclosed that PFOA was present in groundwater throughout the facility and at the perimeter up to 46,000 ppt.

88.   However, DuPont falsely characterized those results as showing "very low levels" and that "PFOA is being contained on-site by the site groundwater containment system."

89.   Since at least 1991, Defendants Solvay knew that it was discharging large amounts of PFNA and other toxins into the environment from their West Deptford, New Jersey facility located at 10 Leonard Lane, West Deptford, NJ 08086.

90.     In 2006, the NJDEP conducted its first statewide occurrence study of PFAS in drinking water.

91.     That study revealed that 65% of sampled drinking water sources had PFOA compounds present, and 30% had PFOS compounds present.

92.     In the samples tested, PFOA was detected up to 100 ppt, PFOS was detected up to 43 ppt, and PFNA was detected up to 96 ppt.

93.     NJDEP sampled 992 private wells as of June 2018 for PFAS and detected the following:

a. PFOA in 427 wells (43%) with 284 of those wells having levels of PFOA exceeding the proposed MCL for PFOA; and

b. PFOS in 304 wells (31%) with 40 of those wells having levels of PFOS exceeding the proposed MCL for PFOS.

94.     400 of those sampled wells were sampled as part of the remedial investigation emanating from Solvay's West Deptford facility.

95.     Plaintiff Alexander Slusser and his parent and natural guardian Theresa Slusser while pregnant with Plaintiff Alexander Slusser consumed, ingested, and otherwise was exposed to high concentrations of PFAS and other injurious substances due to Defendants' negligent, careless, wrongful, reckless and/or intentional failure to take appropriate steps to prevent and/or reduce the discharge of PFAS and other injurious substances into Plaintiff's environment including but not limited to their drinking water.

96.     Studies show that exposure to PFAS have the capacity to cause testicular cancer, kidney cancer, liver cancer, autoimmune disorders, endocrine disorders, genetic damage,

developmental birth defects to fetuses, developmental defects to breastfed babies, reduced

vaccine response, increased cholesterol, and increased liver enzymes.

97.    Plaintiffs Theresa and William Slusser, Individually have also suffered damages

in their derivative capacity as parents and natural guardians of their son Alexander.

98.    Defendants' misconduct, (both individually and collectively) and the resulting

wrongful exposures, proximately caused Plaintiffs' injuries and damages as described above.

99.    As a consequence, each Defendant is individually and jointly and severally liable

to Plaintiffs for both compensatory and punitive damages.

## CLAIMS

### Count I: Negligence

### Plaintiffs v. All Defendants (Including John Doe Entities #1-10)

100.    Plaintiffs incorporate the allegations contained in all preceding paragraphs as if

fully restated herein.

101.    Defendants knew or should have known that the use of PFAS and/or discharge of

PFAS and other chemicals into the air, soil, groundwater and drinking water are hazardous to

human health and the environment.

102.    Defendants further knew or should have known that it was unsafe and/or

unreasonably dangerous to discharge PFAS and other chemicals into the environment in close

proximity to surrounding residential communities, including Plaintiffs'.

103.    Defendants DuPont, Chemours, Solvay, Arkema, and John Doe Entities #1-10

had a duty to take all reasonable measures to ensure that PFAS and other chemicals would be

effectively contained and not discharged into the surrounding environment.

104.    Defendants DuPont, Chemours, Solvay, Arkema, and John Doe Entities #1-10 had a duty to operate and manage their facilities and its related wastes in such a way as to not create a nuisance or dangerous condition that could cause injury or damage to human health and the environment.

105.    Defendants DuPont, Chemours, Solvay, Arkema, and John Doe Entities #1-10 further had a duty to ensure that the manufacturing processes they chose to employ did not unreasonably endanger the drinking water relied upon by residents in the surrounding community, including Plaintiffs.

106.    Defendants DuPont, Chemours, Solvay, Arkema, and John Doe Entities #1-10 breached the above-stated duties by unreasonably disposing of PFAS and other chemicals in a manner which made it foreseeable that they would enter the environment, specifically but not limited to the groundwater, exposing nearby residents who relied upon the groundwater for their drinking water supply, including Plaintiffs.

107.    Defendant 3M had a duty to warn users of their PFAS and other relevant products of the dangers of releasing PFAS and other relevant products into the environment.

108.    Defendant 3M breached the above-stated duty by failing to adequately warn and provide sufficient instructions to purchasers such as Defendants Solvay, Arkema, DuPont, Chemours, and John Doe Entities #1-10, to avoid discharging PFAS and other relevant products into the environment where it was likely to enter the environment including the soil, air, and water including groundwater and be inhaled, absorbed and/or ingested by residents in surrounding communities, including Plaintiffs.

109.   Defendant 3M further breached a duty by neglecting to inform itself of the improper manner in which its purchasers, including the other Defendants mishandled highly toxic 3M products.

110.   As a direct and proximate result of these acts and omission, Defendants individually and collectively wrongfully caused the environment to be contaminated with PFAS and other toxins, thereby exposing Plaintiffs to these chemicals and substances, and causing injury to them as described above.

111.   All Defendants contributed to the contamination of the environment with PFAS and other harmful substances, and all subsequently contributed to Plaintiffs' exposure to these chemicals, thereby causing injury to them.

112.   The acts and omissions of Defendants were negligent, and as a result, Plaintiff Alexander Slusser has suffered and/or will in the future suffer damage in the form of bodily injury, emotional distress, economic loss, medical expenses and was otherwise damaged, for which Defendants are liable. Similarly, Plaintiffs Theresa and William Slusser have suffered derivative damages for which Defendants are liable.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants for compensatory and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

## Count II: Gross Negligence and Recklessness

### Plaintiffs v. All Defendants (Including John Doe Entities #1-10)

113.   Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

114.    At all relevant times, Defendants, as detailed above, committed acts and omissions with respect to PFAS and other chemicals with actual malice and/or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions and/or with gross negligence.

115.    Specifically, Defendants caused, permitted, and allowed the release of PFAS and other dangerous toxins into the environment including the air, water, and soil, including the drinking water of Plaintiffs, constituting an entire want of care and a conscious indifference to the rights, welfare, safety, and health of Plaintiffs, such that Defendants' acts constitute gross negligence or reckless, willful or wanton misconduct.

116.    Such conduct was motivated by greed in an effort to maximize profit with disregard to their duties and responsibilities to the public and to Plaintiffs.

117.    All Defendants contributed to the contamination of the environment with PFAS and other toxins, and all subsequently contributed to Plaintiffs' exposure to these chemicals, thereby causing injury to them and their property.

118.    Defendants' conduct involved deliberate acts or omissions with knowledge of a high degree of probability of harm to the Plaintiffs and an attendant reckless indifference to their health, safety, and welfare.

119.    Defendants' conduct demonstrated a willful and wanton, malicious and reckless disregard of the rights of Plaintiffs so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants for compensatory and non-compensatory damages, and punitive damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

### Count III: Private Nuisance

**Alexander Slusser, By His Parents and Natural Guardians Theresa and William Slusser v. Solvay, Arkema, DuPont, Chemours & John Doe Entities #1-10**

120.    Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

121.    Defendants acts and omissions with respect to the release of PFAS and other toxins in the environment resulted in the contamination of the air, soil, and water, including but not limited to Plaintiff's water supply, and have thus unreasonably interfered with Plaintiffs' use and enjoyment of their property, invading the home and body of Plaintiff, Alexander Slusser.

122.    Defendants acts and omissions with respect to the release of PFAS and other toxins has made Plaintiff's water supply unfit for consumption and other domestic purposes.

123.    Defendants' unreasonable interference with the use and enjoyment of Plaintiff's property constitutes a continuous invasion of her rights.

124.    Defendants, Solvay, Arkema, DuPont and Chemours all contributed to the contamination of the environment with PFAS and other toxins, and all substantially contributed to a private nuisance on Plaintiff.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants for compensatory and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

### Count IV: Public Nuisance

**Alexander Slusser, By His Parents and Natural Guardians Theresa and William Slusser v. Solvay, Arkema, DuPont, Chemours & John Doe Entities #1-10**

125.    Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

126.    Defendants' conduct detailed above unreasonably interfered with a right common to the general public, including the public's right to be free from environmental contamination in the air it breathes and water it drinks, and in which its members bathe, shower, and swim.

127.    Defendants' conduct detailed above unreasonably and significantly interfered with the public health and public safety by contaminating water, soil, and air with toxic and carcinogenic chemicals.

128.    Defendants' conduct was of a continuing nature, and/or produced a long-lasting effect, and Defendants knew and/or had reason to know that it would have a significant effect on the public's rights.

129.    Plaintiff, Alexander Slusser, suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference.

130.    Defendants' acts and omissions with respect to the release of PFAS and other toxins in the environment including the air, soil, and water resulted in the contamination of Plaintiff's home and private water supply.

131.    Defendants' unreasonable interference with the use and enjoyment of Plaintiff's property constitutes a continuous invasion of her rights.

132.    Defendants, Solvay, Arkema, DuPont and Chemours all contributed to the contamination of the environment with PFAS and other toxins, and all subsequently contributed to the public nuisance imposed on Plaintiff.

133.    Defendants' creation of a continuing public and/or private nuisance has damaged Plaintiff in the form of bodily injury, emotional distress, and other damages all of a type not common to the general public, for which Defendants are liable.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants for compensatory and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

### Count V: Past and Continuing Trespass

### Alexander Slusser, By His Parents and Natural Guardians Theresa and William Slusser v. Solvay, Arkema, DuPont, Chemours & John Doe Entities #1-10

134.   Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

135.   As related above, Alexander Slusser, by his Parents and Natural Guardians Theresa and William Slusser, is the owner and/or possessor of real property and resides on that property.

136.   Defendants negligently, recklessly, and/or intentionally failed to properly control, apply, use and/or dispose of PFAS and other toxins resulting in its discharge into the environment entering, invading, intruding, and injuring the rights of Plaintiff to possess and enjoy her property.

137.   Plaintiff has not consented and does not consent to the contamination alleged herein, and Defendants knew or reasonably should have known that Plaintiff would not consent to such.

138.   Defendants, Solvay, Arkema, DuPont and Chemours all contributed to the contamination of the environment with PFAS and other toxins, and all subsequently contributed to the past and continuing trespass imposed on Plaintiff.

139.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, the soil and drinking water wells on Plaintiff's property has been contaminated with

PFAS, causing significant personal injuries and damage, including actual, consequential, and nominal damages as described above.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants for compensatory and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

### Count VI: Strict Liability (Abnormally Dangerous Activities)

### Plaintiffs v. Solvay, Arkema, DuPont, Chemours, 3M & John Doe Entities #1-10

140.    Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

141.    At all relevant times, Defendants Solvay, Arkema, DuPont, Chemours, 3M  and John Doe Entities #1-10 sold, disposed of, discharged, and emitted hazardous substances from their facilities which they owned, controlled, and operated.

142.    As a result of Defendant 3M selling and Defendants Solvay, Arkema, DuPont, Chemours and John Doe Entities #1-10 discharging such substances from their sites, the groundwater under Plaintiffs' property was contaminated with hazardous substances, creating actual harm to Plaintiffs.

143.    The manufacturing, utilization, disposal, and discharge of PFAS and other chemicals constitute abnormally dangerous activities that introduce an unusual danger in the community.

144.    Defendants' activities in selling, manufacturing, utilization, disposal, and discharge of these products presented a high degree of risk of harm to the person, land, and/or chattels of others.

145.    It was likely that the harm resulting from Defendants' activities would be great.

146.   The exercise of reasonable care does not eliminate the risk of harm posed by Defendants' activities.

147.   Defendants' activities are not a matter of common usage in the areas in which they were carried out.

148.   Defendants' activities were inappropriate to the locations in which they were carried out.

149.   The dangerous attributes of and risk posed by Defendants' activities outweighed their value to the community.

150.   The manufacturing, utilization, disposal, and discharge of these products are not matters of common usage in the areas where these activities were carried out.

151.   At all relevant times, the risk of the Defendants' abnormally dangerous activities outweighed the value to the community.

152.   Defendants' acts and omissions in selling, manufacturing, utilizing, disposing, and discharging hazardous chemicals proximately caused the contamination to Plaintiffs' properties and injuries to Plaintiffs, making them strictly liable for the harm caused by such contamination.

153.   Defendants Solvay, Arkema, DuPont, 3M and Chemours all foreseeably contributed to the contamination of the environment with PFAS and other toxins, and all subsequently contributed to Plaintiffs' exposure to these chemicals, thereby causing injury to them.

154.   As a direct and proximate result of Defendants' discharges of hazardous substances and contaminants, Plaintiffs have and will continue to suffer damages.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants for compensatory and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

### Count VII: Strict Liability (Failure to Warn)

### Plaintiffs v. 3M & John Doe Entities #1-10

155.   Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

156.   Defendant 3M developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, and/or supplied PFAS and other relevant products for sale and sold such products to Defendants DuPont, Chemours, Solvay, Arkema, and John Doe Entities #1-10 in the ordinary course of their businesses.

157.   Upon information and belief, Defendants DuPont, Chemours, Solvay, Arkema, and John Doe Entities #1-10 utilized the PFAS chemicals and other toxins supplied by Defendant 3M in a reasonably foreseeable and intended manner.

158.   The PFAS and other relevant products sold by Defendant 3M were unreasonably dangerous to residents of surrounding communities, including Plaintiffs, without adequate warnings and instructions to prevent discharge of PFAS and other toxins into the environment and accumulation inside the bodies of residents in surrounding communities, including Plaintiffs.

159.   Defendant 3M knew or should have known that the PFAS and other products they sold would be discharged into the environment and cause contamination of the water supply of residents and accumulation in the blood serum of residents living in the surrounding communities, including Plaintiffs.

160.    Defendant 3M failed to advise Plaintiffs as well as  Defendants Solvay, Arkema, DuPont, Chemours, and John Doe Entities #1-10 which were purchasers, users or those foreseeably exposed, to their PFAS and other toxic products about the risks these products posed to foreseeable third parties, such as Plaintiffs, and about techniques that could be employed to reduce or eliminate these risks.

161.    Defendant 3M had actual knowledge of the health hazards associated with PFAS and other toxic exposures through both animal studies conducted by researchers employed or contracted by such Defendants and though experience with Defendant's own workers, but, upon information and belief, failed to share such information with purchasers, users or those foreseeably exposed to their products, including Plaintiffs, Defendants, DuPont, Chemours, Solvay, Arkema, and John Doe Entities #1-10, or with governmental agencies.

162.    Defendant 3M acted with reckless indifference to the health and safety of residents in surrounding communities where its PFAS and other relevant products were used by failing to provide adequate warnings of the known dangers of such products when discharged into the environment and ingested by nearby residents, such as Plaintiffs.

163.    Defendant 3M had a duty to warn users of their PFAS products and other toxic products of the dangers of releasing PFAS into the environment.

164.    Defendant 3M breached the above-stated non-delegable duty by failing to adequately warn and provide sufficient instructions to purchasers such as Defendants, Solvay, Arkema, DuPont, Chemours, and John Doe Entities #1-10, to avoid discharging PFAS and other toxins into the environment where it was likely to enter groundwater and be ingested by residents in surrounding communities, including Plaintiffs.

165.    As a direct and proximate result of Defendant 3M's acts and omissions, Plaintiffs have and will continue to suffer damages.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendant for compensatory and non-compensatory damages, together with interest, costs, attorneys' fees, and all such other relief as the Court deems proper.

### Count VIII: Strict Liability (Defective Design)

### Plaintiffs v. 3M & John Doe Entities #1-10

166.    Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

167.    Defendant 3M designed, manufactured, and sold PFAS and other toxins that were used at the Chambers Works and West Deptford facilities and elsewhere by Defendants DuPont, Chemours, Solvay, Arkema and John Doe Entities #1-10.

168.    As a manufacturer and seller of PFAS and other toxins, Defendant 3M had a duty to make and sell products that are reasonably fit, suitable, and safe for their intended or reasonably foreseeable uses.

169.    Defendant 3M owed that duty to direct users of its products, to reasonably foreseeable users of its products, and also to any person who might reasonably be expected to come into contact with these products, such as Plaintiffs.

170.    Defendant 3M's PFAS products were used in a reasonably foreseeable manner and without substantial change in the condition of such products and were defective and unfit for their reasonable use.

171.    Defendant 3M knew or should have known that use of its PFAS and other toxic products used by Defendants DuPont, Chemours, Solvay, Arkema, and John Doe Entities #1-10

would result in the spillage, discharge, and/or release of PFAS and other toxins into the environment and would contaminate the environment including the groundwater, air, soil, and drinking water of surrounding communities, including Plaintiffs'.

172.   Defendant 3M knew or should have known that its PFAS and other toxic products would eventually come into contact with and harm residents in surrounding communities, including Plaintiffs.

173.   Defendant 3M's PFAS products were defective in design and unreasonably dangerous because, among other things:

   a.   PFAS and other toxins cause extensive and persistent contamination when used in a reasonably foreseeable and intended manner; and

   b.   PFAS and other toxic contamination in the environment, including the air, soil, and groundwater, which are the sources of drinking water to citizens in the surrounding communities, including Plaintiffs, poses significant threats to their health, safety, and welfare.

174.   At all relevant times, Defendant 3M's PFAS and other toxic products which they designed, manufactured, and sold were dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

175.   The foreseeable risk to public health and welfare, including that of Plaintiffs', posed by Defendant 3M's PFAS and other products outweighed the cost to Defendant 3M of reducing or eliminating such risk.

176.   Defendant 3M knew or should have known about reasonably safer and feasible alternatives to PFAS and other toxins.

177.    As a direct and proximate result of Defendant 3M's acts and omissions, Plaintiffs have and will continue to suffer damages.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendant for compensatory and non-compensatory damages, together with interest, costs, attorneys' fees and all such other relief as the Court deems proper.

### Count IX: Punitive Damages

### Plaintiffs v. All Defendants (Including John Doe Entities #1-10)

178.    Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

179.    At all material times hereto, Defendants knew or should have known that their PFAS and other toxic chemicals would contaminate the environment including the air, soil, and groundwater and contaminate the drinking water of residents in surrounding communities, including Plaintiffs.

180.    At all material times hereto, Defendants knew or should have known that PFAS and other chemicals were hazardous substances and the reckless, and/or wanton and willful discharge of those chemicals into the environment and surrounding communities would eventually reach Plaintiffs' property, soil, air, and drinking water wells thus exposing them to high and injurious concentrations of the hazardous chemicals.

181.    At all material times hereto, Defendants knew or should have known of the health and environmental impacts of PFAS and other toxins for decades but continued to use them in products and release them into the environment.

182.    At all material times hereto, Defendants knew that PFOA and PFOS and other toxins were harmful to people and the environment based on its own studies.

183.    At all material times hereto, despite actual or constructive knowledge of its chemicals' toxicity to humans and the environment, Defendants proactively sought to conceal that information from the public.

184.    At all material times hereto, despite actual or constructive knowledge of its chemicals' toxicity to humans and the environment, Defendants proactively misrepresented the chemicals' hazardous properties, including knowingly and purposefully withholding material information from regulators and governmental agencies.

185.    At all material times hereto, even after Defendants acquired actual knowledge that it was causing groundwater, soil, air, and drinking water contamination and thus exposing nearby residents to its PFAS and other toxic chemicals, including Plaintiffs, Defendants continued their operations and continued discharging the hazardous chemicals into the environment and exposing residents in surrounding communities, including Plaintiffs, in reckless and conscious disregard for the serious health and safety risks associated with such exposure.

186.    At all material times hereto, Defendants committed acts and omissions with respect to PFAS and other toxins with actual malice and/or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

187.    At all material times hereto, Defendants knowingly, continuously, and with conscious indifference to the rights of residents in surrounding communities, including Plaintiffs, to have access to clean air, soil, water, and drinking water, caused, allowed, or permitted the discharge of large quantities of PFAS into the environment, air, soil, and groundwater, had no justification for doing so, and made no effective effort to alleviate the problem.

188.    Such conduct was motivated by greed and taken in deliberate and knowing disregard of their duties to Plaintiffs and all similarly situated individuals.

189.   Defendants' acts and omissions as set forth in the preceding paragraphs demonstrate their reckless and conscious disregard the health, safety, welfare, homes, and property values of residents in the community, including Plaintiffs.

190.   As a direct and proximate result of Defendants' conscious and deliberate disregard for the health, safety, welfare, homes, and property values of residents in surrounding communities, including Plaintiffs, Plaintiffs suffered and continue to suffer severe and permanent personal injuries and other damages, both economic and noneconomic, as set forth above.

191.   The aforesaid conduct of Defendants was committed with knowingly, conscious, and deliberate disregard for the rights and safety of residents in surrounding communities, including Plaintiffs, thereby entitling them to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.

192.   Defendants' actions showed willful misconduct, malice, fraud, wantonness, and/or oppression, and demonstrates conscious indifference to the consequences.

WHEREFORE, Plaintiffs request that this Court impose punitive damages upon Defendants, together with interest, costs, attorneys' fees and all such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Steven Phillips, Esq. is hereby designated as trial counsel on behalf of Plaintiffs.

## CERTIFICATION PURSUANT TO L.CIV.R. 11.2

The undersigned counsel certify that, with the following exceptions, the matter in controversy is not the subject of any other action pending or contemplated:

1.   *John Giordano et al. v. Solvay Specialty Polymers, USA, et al.*, C.A., No. 1:19-cv-21573, which is venued in the Camden Vicinage; and

2.   *Kimberly Bond et al. v. Solvay Specialty Polymers USA, LLC, et al.* C.A. No. 1:20-cv-08487, which is venued in the Camden Vicinage.

The undersigned counsel further certify that we are aware of no other parties who should be joined in this matter at this time.

**PHILLIPS & PAOLICELLI, LLP**
Attorneys for Plaintiffs


BY:   s/ Steven Phillips
Steven Phillips, Esq.


**SZAFERMAN LAKIND BLUMSTEIN & BLADER,**
Attorneys for Plaintiffs


BY:   s/ Arnold Lakind
Arnold Lakind, Esq.


BY:   s/ Robert Lytle
Robert Lytle, Esq.


Dated:  August 25, 2020